## In the Matter of the Estate of Potter & Page.

1. An assignment for the benefit of creditors always leaves a resulting trust in the assignor, which, if his debts have been actually paid or a legal presumption of payment has arisen from lapse of time, entitles him to the possession of the assigned property.

2. Assignees under an assignment for creditors made a final dividend of the estate twenty-six years after the assignment and transmitted to England the portion set apart for the creditors there; the fund was returned and remained for thirty years afterwards in the hands of the assignees. *Held*, that the representative of the assignor was entitled to it.

3. A period of less than twenty years in connection with persuasive circumstances may be submitted to a jury as a ground to presume payment in fact. Per ALLISON, J.

4. The mere declaration of the assignee that he awards part of the fund to persons claiming to be creditors, does not operate as a bar against a claim which the assignor may make to it. *Id.*

March 4th 1867.

Appeal by The Pennsylvania Company for Insurance on Lives, &c., from the decree of the Court of Common Pleas of *Philadelphia*, in the matter of the estate of Potter & Page, assigned for the benefit of creditors.

Samuel Potter and William Page, trading in Philadelphia as Potter & Page, and in London as Samuel Potter & Co., made an assignment for the benefit of their creditors, on the 28th of September 1811, to Paschall Hollingsworth and Thomas Astley.

In February 1837, the assignees declared a fifth dividend, and on the 21st of March 1838 remitted $1613.37 to England, for the creditors in that country. This money was never distributed among the parties for whom it was designed, but was returned to the assignees on the 22d of March 1839. The money was then invested by the assignees, and it, with $179.20 received from another source, accumulated in their hands until December 26th 1846, when Mr. Hollingsworth, the survivor, filed another account, and prayed to be discharged from the trust. The application was granted by the court on the same day, and the Pennsylvania Company for Insurance on Lives, &c., were appointed in his stead. They received from him the funds of the estate in his hands.

On the 16th of April 1866, an act was passed directing the trustees to pay over the balance of the assigned estate in their custody to Elizabeth Page, widow and administratrix, &c., of William Page, deceased, and to the legal representatives of Samuel Potter, if, upon adjustment of his indebtedness to the firm, anything should be found due to them.

Mrs. Page thereupon petitioned the Court of Common Pleas for a decree that the trustees should pay over the balance in their hands, as directed by the Act of Assembly. After an answer by the trustees, the court directed them to account, Allison, J., delivering the following opinion:—

4 P. F. SMITH—30

[In the Matter of the Estate of Potter & Page.]

" The widow of William Page presents her petition, representing that she is administratrix of the estate of her late husband, who, together with Samuel Potter, constituted the firm of Potter & Page, and that they, on the 28th of September 1811, executed to Paschall Hollingsworth and Thomas Astley a general assignment for the benefit of creditors; that the assignees made several dividends to creditors, and in 1846, Hollingsworth, the surviving assignee, filed an account, was discharged by the Court of Common Pleas, and the Pennsylvania Company for Insurance on Lives and Granting Annuities was appointed assignees in his stead. The prayer of the petition is, that the said assignees shall be decreed to pay to the petitioner the balance in their hands, for distribution between herself, as administratrix of said William Page, and the legal representatives of Samuel Potter, if, upon an equitable settlement of the accounts of the said partners, anything shall be found to be due to the legal representatives of said Potter.

" The answer of the Pennsylvania company admits their appointment as recited in the petition, and that they have in their hands the sum of $4327.66, all of which, except the sum of $179.20, consists of unclaimed dividends, which had been declared by the former assignees in favor of the creditors of said firm. The last-named sum of $179.20 was received from the estate of Pragers & Co., debtors of Potter & Page. The respondents claim that the money in their hands is the property of the creditors of Potter & Page, or their legal representatives, to whom the said dividends were set apart; that said creditors have never been paid, nor does any presumption of law exist of payment, and that as trustees of said creditors they are liable to them, and not to the legal representatives of Potter & Page, or either of them. An assignment for the benefit of creditors creates a resulting trust by operation of law, which entitles the assignor to possession of assigned property as soon as the debts are satisfied, even as against the assignee; Ross *v.* McJunkin, 14 S. & R. 369; and a legal presumption of the payment of debts of an insolvent debtor arises from lapse of time; Power *v.* Hollman, 2 Watts 221; and the computation of time arises from the period when the money is demandable: Sechrist *v.* Sechrist, 1 Pa. R. 420. The doctrine laid down in Ross *v.* McJunkin is reaffirmed in Webb *v.* Dean, 9 Harris 32, that a trust results in favor of the assignor by operation of law, as soon as debts are satisfied, and that a legal presumption of payment of debts arises after a lapse of twenty years.

" But it has repeatedly been held that a less period than twenty years in connection with persuasive circumstances, may be submitted to a jury upon which to ground a presumption of payment in fact: Power *v.* Hollman, 2 Watts 218; Tilghman *v.* Fisher, 9 Watts 442; and Ross *v.* McJunkin, above cited. In Webb *v.* Dean, twenty-nine years having elapsed between the date of assignment

[In the Matter of the Estate of Potter & Page.]

and the date of the trial, it is said, the court would have been quite justified in withdrawing the case from the jury, and ruling it against the plaintiff as a conclusion of law. Drysdale's Appeal, 2 Harris 534, decides, that after a lapse of more than twenty years, the law will presume debts to have been paid, and the trust executed so far as respects the creditors. In this case there was a conveyance of lands to trustees for payment of debts. To the same point is Reynell Coates' Estate, 2 Parsons 258 ; see also for same principle 7 Watts 71 ; 7 Harris 138 ; and 1 Parsons 70, 170 and 487.

" Upon the authority of the above-cited cases, we would perhaps have felt ourselves justified in ordering the assignee to pay over the fund in their hands to the legal representatives of Potter & Page, if the application had been based on the principles so strongly stated, and so often repeated in the authorities to which we have referred. The assignment having been made fifty-five years since, we think that no question can be fairly raised against the legal presumption of the payment of the creditors of Potter & Page, in the absence of any proof to the contrary. The presumptions of the law are satisfied nearly three times over, and with the legal conclusions of payment thus established, why should this resulting trust not be carried into effect, and the assignors, or those who have succeeded to their rights, be put in possession of that which remains of the assigned estate ? An assignment for the benefit of creditors, has for its object the payment of the debts of the assignor. If the debts have been paid in fact, or in law, why longer maintain a trust in the hands of the assignee which is practically a dead trust ? It is much more equitable that that which remains of the estate should revert to the assignor, than to permit a naked trustee to take to himself the perpetual enjoyment or absolute ownership of property to which he has no possible claim, except as a stakeholder, to hold until the right of ownership has been established. It is contended by the respondents that they are trustees for the creditors, to whom the dividends have been awarded, and not for the assignors, claiming that the parting of the money in the hands of the assignee, for payment to creditors on account of their demands, is such a divestiture of ownership of the assignor, and such a vesting of property in the creditor as to put an end to the relation of trustee and *cestui que trust*, between the assignor and assignee, as to the portion of the fund so divided and set apart. But this is, we think, begging the question, nor do we concur in the proposition as above stated. It may be conceded that if dividends of assigned property are paid bonâ fide after notice and without objection, such payments would be conclusive on all parties in interest. But that the mere declaration of the assignee having the exclusive control of the fund, that he awards certain portions

[In the Matter of the Estate of Potter & Page.]

of it to persons claiming to be creditors, should operate as an effectual bar against all claims which the assignor may make to the same in the hands of the assignee, we do not assent to as a sound legal proposition. Why should the assignor not be allowed to claim a return to himself of dividends if made in mistake to one not a creditor, or if he show a release of claim of the creditor, to whom a dividend had been awarded, where the question is exclusively between himself and the assignee, can the assignee in either case set up successfully in resistance of such demand, his award of the fund to be appropriated to the payment of a creditor's claim? We think that he cannot. In Power *v.* Hollman, cited above, the court say that after the assignment, the assignor had an interest, and if he waited for a considerable length of time, and the creditors did not proceed, he should be restored to his estate. After such a lapse of time as occurred in this case, the debts would be presumed to have been paid. The assignment was made in 1810, and the decision of the Supreme Court was reached in 1834. Judge Rogers says: 'That these claims would not be barred by the Act of Limitation may be admitted, but we cannot agree that lapse of time will not raise a presumption of payment. No steps were taken by the creditors in relation to the fund; hence,' he says, 'the presumption arises that the debts have been paid, or that some satisfactory arrangement has been made by the assignor.' The doctrine of presumptions has been held to apply as between assignees and creditors, so that lapse of time may raise the presumption of an execution of a trust, for creditors, and let in other parties, interested in the trust estate, whose rights accrue after creditors are satisfied: Mellish's Estate, 1 Pars. 482. No length of time bars a direct trust; but to constructive trusts, as those arising by implication of law, the doctrine does not apply; Beckford *v.* Wade, 17 Vesey 97; and in Ex parte Heathfield, 8 Taunt. 403, which was under an act for the relief of insolvent debtors, an assignee having been appointed, the court, after the lapse of forty years, refused an application for the appointment of a new assignee, and for an account of the insolvent's estate. With much greater force does a presumption of payment apply as against a single debt, or a specialty, than against a qualified or implied trust. In this case no such answer is attempted to be set up, on the contrary, the respondents admit the possession of the assigned fund, and bring into court an account stated of the same. But it is supposed that the principles laid down in Thomas Latimer's Estate, 2 Ashmead 520, stand in the way of our making a disposition of the fund held by the respondents, such as we have suggested it would be proper for us to make. We do not so understand the ruling in Latimer's Estate. That was an application on the part of a substituted assignee, to have awarded

[In the Matter of the Estate of Potter & Page.]

to him certain dividends set apart to several creditors of the assignor by a former assignee, for the purpose of making payment of such dividends to the creditors to whom they had been awarded, or if unclaimed by them, for general distribution among the other creditors of the assignor. A period of thirty-one and of twenty-two years had intervened between the making of the first and second dividends and the claim of the substituted assignees. The question there was in an essential particular different from that which is raised by the petition and answer before us. Judge King states that difference with great clearness and in a very few words. He says the objection of the claim of general creditors is the simple one, that the property of one man ought not without the assent of the owner to be taken and given to another. The rights of creditors as between themselves and the assignee become fixed by a dividend made by mutual agreement, in which all have for many years acquiesced, and such dividends vest an exclusive right in each creditor as against other creditors to his ascertained proportion of the assets. From the time that dividends of an assigned estate are declared, the assignee holds them for the creditor to whom they are set apart, and in Latimer's Estate a claim was made to give that which became primâ facie the property of one creditor, by award of the assignee, to other persons who happened also to be creditors of the assignor. This is all that Judge King decided could not be done. The question was reserved by him as to whether the creditors whose dividends remained in the hands of the assignee, could assert their right to the fund after the lapse of so many years, or whether it was barred by lapse of time, and whether the trust as to them would in law be regarded as executed. The petitioner, however, bases her application upon another ground, namely, the passage of an Act of Assembly on the 16th day of April 1866, by the legislature of Pennsylvania, which after reciting in the preamble the fact of the fund being in the hands of the company as assignees, and that from lapse of time the debts of Potter & Page are legally presumed to have been paid, and that the legal representatives of the assignors have become entitled to said funds, enacts that said company are authorized, empowered and directed, to pay the balance of said assigned estate in their possession, to the petitioner, and to the legal representatives of Samuel Potter, if upon an adjustment of the accounts of Potter & Page, anything shall be found to be due to the estate of Potter. This act of the legislature is imperative in its directions to the respondents, who by the same authority are empowered to hold this as a trust of a like character, and is to be regarded, if of any validity whatever, in the light of a legislative command to the respondents, to hand over the trust funds in their possession to those to

[In the Matter of the Estate of Potter & Page.]

whom, according to the recital contained in the preamble to the act, they rightfully belong.

" In Latimer's Estate it is said that nothing short of legislation can work such a result as was sought to be accomplished in that case, namely, to give the dividends belonging to certain creditors to other creditors of an assigned estate, which under the British bankrupt system, by Act of Parliament, was directed to be done, but such acts were prospective not retrospective in their operation. The Act of April 16th 1866 requires the performance of that which has much more of legal difficulty connected with it than acts like that of 6 Geo. 4, c. 16, § 110, which required three years to elapse before unclaimed dividends could be divided among creditors. The Act of 1866 is in the nature of a legislative decree, which attempts to adjudicate on rights that had become fixed, and therefore is to be regarded of no value in the determination of the question before us. But guided by principles which we think warrant the court in making the decree prayed for, we will be prepared on the adjustment of the accounts between Potter and Page, to make the necessary order for the entering of such decrees, and for carrying the same into effect, unless cause be hereafter shown to the contrary on a settlement of the account of the respondents, appointed assignee in the place of Paschall Hollingsworth, resigned."

The trustees having settled their account, it was referred to William D. Baker, Esq., to audit and adjust, and to report distribution.

The auditor found the balance, after deducting the expenses of the audit, &c., to be $3987.35.

The claimants were Mrs. Page, on the ground of the great length of time which had elapsed since the assignment, raising the presumption that all the debts were paid; and that Potter was so much indebted to the firm at the time of the assignment as to extinguish any claim of his representatives to any part of the fund. She relied also on the Act of Assembly.

The Farmers' and Mechanics' National Bank, judgment-creditors of Potter & Page, claimed the fund, alleging that they asserted their claim in 1851 when an abortive attempt had been made to recover the fund; alleging that if the debts in England were presumed to be paid the fund should be paid to creditors here and not to the representatives of the assignor.

The accountants took the position that the fund belonged to the English creditors.

The auditor reported that the claim of the Commonwealth by way of escheat was released by the Act of Assembly.

He also reported the whole balance to Mrs. Page on the principles of the foregoing opinion of Judge Allison.

[In the Matter of the Estate of Potter & Page.]

Exceptions were filed to the report; they were dismissed and the report was confirmed.

The trustees appealed and assigned for error the dismissing the exceptions and confirming the report.

*J. L. Harmar* and *W. F. Judson*, for appellants, cited Miller's Appeal, 11 Casey 482; Patten's Appeal, 9 Wright 151; Ex parte Healy, re Norris, 1 Dea. & Ch. 361; Ex parte Fedden, Id. 379; Ex parte Holford, 4 Id. 798, s. c. 2 M. & A. 289; Ex parte Powell, Mont. & M. 283; Smith *v.* Duke of Chandos, Barnard 419; 1 Dea. & Ch. 513; 3 Id. 22; Ex parte Bright, 2 Id. 8.

*J. A. Clay*, for appellee, cited Miller's Appeal, 11 Casey 481; Patten's Appeal, 9 Wright 151; Morris *v.* Olwine, 10 Harris 441; Keim's Appeal, 3 Casey 42; Diemer *v.* Sechrist, 1 Pa. R. 419; Power *v.* Hollman, 2 Watts 218; Webb *v.* Dean, 9 Harris 29–32; Ross *v.* McJunkin, 14 S. & R. 364; Tilghman *v.* Fisher, 9 Watts 442; Reynell Coates's Estate, 2 Pars. 258; Drysdale's Appeal, 2 Harris 534; Ex parte Wackerbath, 2 Glyn & Jam. 151; Ex parte Whiteside, 1 Rose 319; Clark *v.* Capron, 2 Ves. Jr. 666; Latimer's Estate, 2 Ashmead 520; Act of April 16th 1866, Pamph. L. 945.

The opinion of the court was delivered, July 3d 1867, by

READ, J.—An assignment by an insolvent debtor for the benefit of creditors, always leaves a resulting trust in the assignor, which, if his debts were actually paid or a legal presumption of their payment has arisen from lapse of time, entitles him to the possession of the assigned property. The assignment was made in this case nearly fifty-six years ago; and the money now in the hands of the accountants has remained unclaimed for over thirty years. This length of time raises the legal presumption already stated, and the widow and representative of William Page is clearly entitled, as against the accountants, to the property in their hands. They are legal owners only for the beneficial or equitable owners, and, as the bank has no claim to it, it really belongs to Mrs. Page in her representative capacity, and so the auditor and the court below have rightly decided. The case is so fully developed in the opinion of Judge Allison and the report of the auditor, that we deem it unnecessary to say more than that

The decree is affirmed.