Appeal of Robert Ralston and Francis W. Ralston, Jr., Administrators, d. b. n. c. t. a. of William Meredith, deceased, in the matter of the assigned estate of William Wurts & Co.

*Assignee for the benefit of creditors — Purchase of claims by assignee against the estate—Presumption—Rights of personal representative of assignor and assignee.*

Where the assignee for the benefit of creditors purchases claims against the assigned estate at a discount, he will not be allowed to recover dividends upon such claims to an amount greater than he paid for them; and where there is no direct evidence that he purchased them for his own benefit, the presumption is that the purchase was made for the benefit of the assigned estate; and where the specific dividends declared upon the claims purchased by him had been received by the assignee in his lifetime or by his personal representatives after his death, that is not sufficient to give the latter standing to contest the claim of the personal representative of the assignor to a fund consisting of dividends declared upon claims of other creditors remaining unclaimed in the hands of the substituted assignee.

*Special assignment for the benefit of releasing creditors—Rights of assignor against creditors to pro rata shares which remain unclaimed by other creditors.*

Where a debtor makes an assignment of a portion of his property for the benefit of releasing creditors, with the direction in the deed of assignment that the fund is to be distributed pro rata among them, and that the shares of those creditors who refuse to sign the release are to revert to the assignor, the releasing creditor becomes thereby a purchaser for value of a share in the fund pro rata with other creditors, but he obtains no interest whatever in the pro rata shares of other creditors, and hence a fund consisting of dividends which have remained unclaimed by the creditors on

whose claims they were declared for a period of more than twenty-one years is payable to the personal representatives of the original assignor, and not to other unpaid creditors of the assigned estate: Estate of Potter & Page, 54 Pa. 465, followed.

*Assigned estate—Adjudication of deceased assignee's administrator's account binding upon the substituted assignee.*

Where an assignee for the benefit of creditors appropriates a fund to his personal use, and upon the adjudication of his administrator's account in the orphans' court the auditor appointed determined that the fund which is in the decedent's assets belongs to the assigned estate, and directs said fund to be transferred to the substituted assignee, which report is confirmed without appeal, such direction fixes the status of the fund, and upon the settlement of the account of the substituted assignee the personal representatives of the deceased assignee cannot again raise the question of the ownership of such fund.

Argued Jan. 29, 1895.    Appeal, No. 213, July T., 1894, by Robert Ralston and Francis W. Ralston, Jr., administrators d. b. n. c. t. a. of William Meredith, deceased, from the decree of the court of common pleas No. 4 of Phila. Co., June T., 1891, No. 264, awarding the fund to S. Davis Page, administrator d. b. n. c. t. a. of William Wurts, deceased.    Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.    Affirmed.

Exceptions to auditor's report.    Before THAYER, P. J., WILSON and ARNOLD, JJ.

On Aug. 11, 1819, Maurice Wurts and William Wurts, two members of the firm of Maurice Wurts & Co., assigned to William Meredith and John Day as trustees, certain specific property to be divided pro rata amongst so many of the creditors of said firm as should execute and deliver to said firm releases and discharges of all demands against them.    The active duties of the trust devolved upon William Meredith, and upon his death Eli K. Price was appointed his administrator.    He was also appointed trustee for the above fund in lieu of Mr. Meredith, deceased.

On the death of Eli K. Price his executors filed an account of the fund in his hands as substituted assignee.

By the account, the accountants charge themselves as of June 1, 1849:

"To amount of unclaimed dividends to date in hands of trustee due the following creditors of the estate of Maurice Wurts & Co.:

| | |
|---|---:|
| ··Bank of England, . ˙ . · . . . . ˙ | $660 01 |
| Compton & Sunley, . . . . . . | 129 83 |
| Coupland & Sons, . . . . ., . . | 656 92 |
| J. Cullen, . . . . ., . . . | 39 28 |
| Hatgood, Brown & Evans, . . . . | 1,248 22 |
| J. Wood & Co., . . . . . . . | 322 11 |
| Allat & Green, . . . . . . . | 1,097 88 |
| Dougall & Son, . . . . . . . | 46 50 |
| J. Evans,. . . . . . . . . | 549 71 |
| Fisher & Son, . . . ˙. ., . ˙. | 267 53 |
| J. Midwood, . . . . . . . | 316 53 |
| | $5,334 52 " |

And as of September 20, 1867:

" Amount of city loan transferred from estate of
William Meredith, deceased, by order of au-
ditor of supplemental account of Eli K. Price,
administrator b. d. n. c. t. a., confirmed by
the orphans' court of Philadelphia county,
and directed to be held for this trust, .    . $3,000 00
" Interest received on same as per items in admin-
istrator's sixth account and supplemental
account and transferred by order of the audi-
tor as above,       .       .       .       .       .       . 2,697 00 "

Which, with the accumulations on these two funds, aggregat-
ing, on June 15, 1891, $79,007.43, after sundry allowances
claimed, produced a balance on hand in cash on the last date,
of $33,355.45.

We have thus two funds: One of $5,334.52, consisting of
unclaimed dividends due to certain specified creditors of the
estate of Maurice Wurts & Co.; the other of $5,697, being the
fund passed upon by auditor Clayton, and directed by him to
be held for the unpaid creditors of Maurice and William Wurts,
or in the event of their not being reached, then for the benefit
of the original assignors, or their representatives, which Mr.
Meredith's books showed were also unclaimed dividends belong-
ing to certain creditors of M. & W. Wurts, who could not be
found, and the accrued interest thereon.

The account of Mr. Eli K. Price, Sr., as trustee of the as-

signed estate of M. and W. Wurts, starts in his books from the date of the account filed, June 1, 1849, and is made by his executors, from all the books and papers at their command.

. The court appointed Franklin Townsend, Esq., auditor to distribute funds which belonged to the assigned estate of Maurice Wurts & Co.

The material facts will be found in his report and in the opinion of the Supreme Court. The auditor reported:

"That in the year 1819 and prior thereto, Maurice Wurts and William Wurts were associated in business under the firm name of Maurice Wurts & Co., which was carried on by them both in the city of Philadelphia, U. S. A., and the city of London, England; that they failed in business about that time, and that by deed poll dated Aug. 11, 1819, the said Maurice Wurts and William Wurts granted, conveyed, assigned, and transferred unto John Day, of the city of New York, and William Meredith, of the city of Philadelphia, their heirs, executors, administrators and assigns, all the estate, real, personal, and mixed, whatsoever and wheresoever, of them the said Maurice Wurts and William Wurts, upon the special trust and confidence to sell and dispose of the same and apply and appropriate the proceeds thereof to and among such of the creditors of the said assignors as should within five months from the date of said deed of trust execute and deliver to said Maurice Wurts & Co., or their agent for that purpose appointed by writing under their hands and seals a full, entire and effectual release of all claims and demands against said Maurice Wurts & Co., as well jointly as severally. Both of said assignees accepted the trust.

"So far as your auditor has been informed there has been no account filed in this jurisdiction by the said original assignees, but in a book kept by the late William Meredith, and which was turned over by him to Eli K. Price, while both were living, and Mr. Price was acting as the attorney in fact of said William Meredith, duly appointed by letter of attorney dated the 6th day of August, 1841, which was produced, there are entries showing the dividends declared and those paid by Mr. Price and by Mr. Meredith.

"Upon the death of Mr. William Meredith, which occurred about Sept. 26, 1844, the executors named in his will having

all renounced, letters of administration d. b. n. c. t. a. on the estate of said William Meredith were granted to the said Eli K. Price, who took said letters at the request of the family of said decedent.

"John Day, one of the original assignees, who survived the said William Meredith, but had received no funds of the trust estate, was discharged from the trust under said assignment by the court of common pleas of this county on the 28th of December, 1844.

"After the death of said William Meredith on proper proceedings had in the court of common pleas of this city and county, Eli K. Price, of Philadelphia, and John Ferguson, of New York, were, on the 28th day of December, 1844, duly appointed trustees under said deed of assignment, in the place and stead of William Meredith, deceased, and John Day, discharged.

"After the appointment of Eli K. Price and John Ferguson, they struck five several dividends from the funds arising from said assigned estate upon all the claims thereon, and paid all of said dividends excepting those included in the schedule of unclaimed dividends hereinafter referred to and included in such payments, the dividends on the claims stated to have been purchased by William Meredith, and also those stated to have been purchased by Maurice Wurts and William Wurts, the receipts for which dividends were produced before your auditor, so that the fund contained in the present account was derived wholly from unclaimed dividends on claims of creditors who never appeared or made any claim upon any of the trustees under this deed of assignment.

"The said John Ferguson appears to have died after the declaration of these dividends by Mr. Price and Mr. Ferguson, and the present account hereto annexed is filed by the executors of Mr. Price, who is stated therein as the surviving trustee, though no account appears to have been filed of record by Day and Meredith or either of them.

"In the year 1867 Eli K. Price, as administrator d. b. n. c. t. a. of William Meredith, deceased, filed his sixth account, and the same was referred by the orphans' court of this county to John Clayton, Esq., to audit, settle and adjust and to report distribution. Mr. Clayton's report shows that in this account

there was included $3,000 of Philadelphia City Six Per Cent
Loan and Interest received thereon from time to time, amount-
ing to $2,697 (together $5,997), and that this fund arose from
unclaimed dividends in the hands of William Meredith at the
time of his decease belonging to certain creditors of M. and
W. Wurts, who could not be found, and that Mr. Peter McCall,
representing the heirs of said William Meredith, contended
that this money in the hands of Mr. Meredith at his death had
no earmark and was not to be distinguished from the residue
of his assets, and that his estate was merely indebted to the
creditors in question of M. and W. Wurts, and that upon their
failure to establish their claims, this fund with its accumula-
tions should be distributed to and among Mr. Meredith's heirs
and next of kin.   The auditor ruled and so reported that the
said investment and the accrued interest thereon had no place
among the assets of the testator, and should be struck out of
said account and said sum of $5,697 be held by Mr. Price in
his capacity of trustee for the creditors of M. and W. Wurts
for the unpaid creditors, or, in the event of their not being
reached, then for the benefit of the original assignors or their
representatives.   This report of Mr. Clayton as auditor, there
appearing no exception thereto, was confirmed absolutely by
the orphans' court on Sept. 20, 1867.

"There appears upon the book above referred to, kept by
Mr. Meredith and turned over by him to Mr. Price, sundry
accounts of the trust estate wherein dividends were struck in
favor of the respective creditors by name, the greater part of
which appears to have been paid, but certain of them have
never been paid to or claimed by the creditors to whom they
were awarded. . . .

"No formal proof of the fact was produced before your au-
ditor, but it appears to have been conceded that the said Wil-
liam Meredith in his lifetime purchased the claims of some of
these creditors, and paid to himself or retained for his own use
the dividends awarded on the claims, and to his appropriation
of such dividends no objection seems to have ever been made.

"It also appeared that the assignors had purchased the claims
of certain creditors and, through their attorney, Charles S.
Wurts, received payment of dividends on the same from the
said Messrs. Price and Ferguson, the substituted trustees.

"No exception or objection appears to have been made to the present account which has been confirmed by the court, and shows a balance of thirty-three thousand three hundred and fifty-five and $\frac{45}{100}$ dollars ($33,355.45), only resulting as above stated from the unclaimed dividends and the interest thereon, and as the result of the careful and continuous investment thereof by Mr. Price, the surviving trustee.

"Two opposing claimants presented themselves before your auditor for this fund. Mr. S. Davis Page, who is the administrator, d. b. n. c. t. a., of William Wurts, deceased, who was the surviving partner of the said firm of Maurice Wurts & Company, the assignors, who appeared in his own behalf and by his said counsel, and claimed the whole balance of said fund under and by virtue of the express terms of the deed of assignment. Robert Ralston and Francis W. Ralston, Jr., who are the administrators, d. b. n. c. t. a., of William Meredith, deceased, who were represented by Lewis Lawrence Smith, Esq., and Caldwell K. Biddle, Esq., and who also claim the whole of said balance of said fund, on the ground that they represent the only parties holding claims under said assignment, who appeared before the auditor. Both the said administrator of William Wurts and the administrators of William Meredith produced to the auditor their respective letters of administration.

"The counsel for the respective claimants presented to the auditor both oral and written arguments, and with the consent and approval of said counsel your auditor has concluded to attach their briefs to this report for the information of your honorable court. . . .

"The case of Est. of Potter & Page, 54 Pa. St. reports, 465, etc., cited by the counsel for the administrator, d. b. n. c. t. a., of William Wurts, deceased, is in all its features, facts and phases almost identical with the case under consideration, with this exception, to wit: that in the case of Est. of Potter & Page an act of assembly was passed on April 16, 1866, directing the trustees to pay over the balance of the assigned estate in their custody of Elizabeth Page, widow and administratrix of William Page, deceased, etc., and Judge ALLISON, in his very elaborate and able opinion, says on this point, 'The act of 1866 is in the nature of a legislative decree, which attempts to adjudicate on rights that had become fixed, and therefore is to be regarded of no value in the determination of the question before us.'

" On behalf of the administrator, d. b. n. c. t. a., of the surviving partner and assignor, William Wurts, deceased, it was contended that the adjudication and appropriation of the unclaimed dividends of the estate of Maurice Wurts & Company made by the orphans' court, under the report of Mr. Clayton, as auditor, hereinbefore mentioned, was (having never been appealed from) conclusive against the rights of Mr. Meredith or his legal representatives to any portion of the fund in this case, which was derived solely and entirely from unclaimed dividends and was in the nature of res adjudicata.

" Without relying upon this as finally determining against the rights of the representatives of Mr. Meredith, but taking it in connection with the decision of the Supreme Court in the case of Est. of Potter & Page as above stated, and after a careful and exhaustive examination and consideration of the authorities cited by the learned counsel for both of the claimants and the testimony and exhibits produced, the auditor is of the opinion that the above cited case of Est. of Potter & Page controls and governs this case, and that therefore the balance in the hands of the accountants, after deducting the expenses of this audit and costs of filing the said account, with all accretion of interest thereon collected since the filing of the account, belongs to the legal representatives of said William Wurts, the surviving assignor, deceased, and your auditor so reports and awards the same to S. Davis Page, as administrator, d. b. n. c. t. a., of William Wurts, deceased."

The administrators of William Meredith filed the following exceptions to the report of the auditor :

" 1. Because he finds that the deed of trust covered all the estate, real, personal, and mixed, of M. & W. Wurts, whereas the said deed of trust conveyed only certain designated property.

" 2. Because he does not find that the release was duly signed by the creditors, the dividends on whose claims are included in the present account.

" 3. Because he does not find what was the aggregate amount of dividends declared since the beginning of the trust.

" 4. Because he misstates the number of dividends declared by Eli K. Price and John Ferguson, the same being six instead of five, and because he does not find their dates.

"5. Because he does not find that a portion of the fund before him was not passed upon by auditor John M. Clayton, in the proceeding before him.

"6. Because he does not attach to his report the account book of the trust estate mentioned in his report and because he does not find that the exhibits produced before him came from and had always been in the custody of the trustee of the Wurts estate or their legal representatives.

"7. Because the auditor finds that no exception was taken to the account as filed, whereas exceptants objected to the said account at the commencement of the proceedings.

"8. Because the auditor did not find that the account should have been stated as a general account.

"9. Because he finds that the case of Est. of Potter & Page, 54 Pa. 465, is, 'in all its features, facts, and phases identical' with the present one, whereas it is radically different in fact, and does not decide the questions of law here involved.

"10. Because he does not find the facts upon which the exceptants base their claim, together with the amount of said claim, and the amount of the balance thereof, which remains unpaid.

"11. Because he does not find that dividends were declared regularly to William Meredith as a creditor or to his legal representatives throughout the continuance of the trust, and also that the assignors or their agent or representatives had knowledge of the ownership of such claims and assented to their payment.

"12. Because he does not find that the estate of William Meredith is still creditor of the trust estate and entitled to be paid before the estate of the assignors is reached.

"13. Because he does not find that the representatives of the Meredith estate used all the diligence necessary since 1867 for the enforcement of their claim.

"14. Because he does not award to exceptants the amount of the balance due them with interest.

"15. Because he awards the entire fund to S. Davis Page, administrator d. b. n. c. t. a. of William Wurts, deceased."

The auditor made the following report upon the exceptions:

"Your auditor also begs to amend his said report in accordance with the second exception filed on behalf of the represen-

tative of William Wurts' estate, being reminded that the said representative did claim the whole balance of the said fund in the hands of the accountants, not only by virtue of the express terms of the deed of assignment, but also by reason of the resulting trust in favor of the assignors under the said deed arising by operation of law.

"And your auditor further amends his said report by striking out the word 'and' at the end of the last line but one, and the word 'who' at the beginning of the last line on the sixth page, and by inserting after the word 'that' at the beginning of the first line on the seventh page, instead of the words following to the end of the second line of the said page these words : 'their testator while assignee and trustee for creditors of Maurice Wurts & Co., under the deed of assignment made to him and John Day by Maurice and William Wurts, dated Aug. 11, 1819, and above referred to, purchased the claims of certain creditors who were beneficiaries and cestui que trusts under the said deed of assignment, of which purchase so claimed there was no direct proof as above stated.'

"Excepting these several matters to which his attention has been called and wherein he now does amend and correct his said report, your auditor sees no reason to make any further changes or modification of his conclusions arrived at, and the report thereof already therein made."

The court dismissed the exceptions and entered a decree confirming the auditor's reports.

*Errors assigned* were (1–15) dismissing exceptions of appellant to the auditor's report; (16) confirming the report of the auditor.

*Lewis Lawrence Smith* and *Caldwell K. Biddle*, for appellants.—The Meredith estate should have the fund as the owner of claims mentioned in the original deed of assignment amounting to \$56,908.84, upon which it has received dividends to the extent of $66\frac{6}{10}$ per cent and interest thereon. Objection is made that: (1) There was no evidence of any express assignment of these claims to Meredith; (2) there is a technical bar to the enforcement of such claims because he was trustee of the assets in his hands; (3) as to a part of the fund the

question has been adjudicated; (4) these claims and all others are presumed to be settled from lapse of time; (5) and that as the fund consists of unclaimed dividends no creditor has a claim upon it other than those upon whose claims such dividends had been declared.

1. The fact of assignment is proven by the indirect evidence of papers, conduct and payment: McReynolds v. Lougenberger, 57 Pa. 13; Starkie on Evidence, *89, 523, 524, and *93, 94; Albrecht v. Breder, 12 W. N. C. 170.

And in the absence of contrary proof such an assignment must be presumed, upon the maxim "omnia præsumuntur legitime facta donec probetur in contrarium:" Vaux Peerage, 5 Cl. and Fin. 614; Lee v. Johnson, L. R., 1 Sc. App. 435.

2. The official relation of Wm. Meredith could not invalidate the assignment claimed to have been made: Pearsoll v. Chapin, 44 Pa. 9; Harrington v. Bank, 101 N. Y. 257; Keller v. Leib, 1 P. & W. 223; Meanor v. Hamilton, 27 Pa. 143; Kribbs v. Downing, 25 Pa. 404; Christy v. Sill, 95 Pa. 380; Chetham v. Hoare, L. R. 9 Eq. 571; Gregory v. Gregory, Coop. Ch. 201; Farnum v. Brooks, 9 Pick. 212; Prevost v. Gratz, 6 Wheat. 498; Hatch v. Hatch, 9 Ves. 292; Portlock v. Gardner, 1 Hare, 607; 2 Story's Equity Jur. 847; Hovenden v. Lord Annersly, 2 Sch. & Lef. 633; Randall v. Errington, 10 Ves. 427; Chalmer v. Bradley, 1 J. & W. 51; In re Morgan, L. R. 18, Ch. Div. 100; Wright v. Vanderplank, 8 De G. M. & G. 137–151; Kerr on Fraud and Mistake, 298–311; Pomeroy Eq. Jur. sec. 965; Bispham's Eq. 260; Perry on Trusts, sec. 869.

3. Auditor Clayton's report has nothing to do with the present claim. The fund there was remitted to the substituted trustee for distribution under the conditions of his trust, which are now to be determined by this court.

4. Presumption of payment cannot arise where (a) the holders of the fund voluntarily come into court and account, and (b) the trust is an express one: (a) Buchanan v. Rowland, 5 N. J. L. 721; Lawson on Presumptive Ev. 308; Morey v. Loan & Trust Co., 14 N. Y. 302. (b) Moss's App., 43 Pa. 23; N. Amer. Land Co.'s Est., 83 Pa. 493; Biddle v. Bank, 109 Pa. 349–358; In re Wilson, 4 Pa. 430–452; Miller's App., 11 Casey, 481; Mellish's Est., 1 Pars. Eq. Cases, 482; Portlock v. Gardner, 1 Hare, 604; Kane v. Bloodgood, 7 Johns. Ch. 114, Life Assoc. v. Siddall, 3 De G. F. & Jr. 72.

In none of the cases cited by appellees was there an express trust, nor a creditor claiming where the fund was admitted to exist in the assignee's custody, nor a question of distribution between creditor and assignor, except in Estate of Potter & Page, 54 Pa. 465, where the assignment was general and no releases required, and the creditor's claim was disallowed by the lower court for other reasons.

5. Unclaimed dividends should be used in satisfying other creditors confessedly unpaid.

(*a*) The purpose of the trust was to pay every debt with interest, and, though no creditor was to be paid to the injury of another, yet, as all up to this time have received their pro rata share, those now not claiming or unfound cannot be injured by the appropriation of their dividends to the payment of the only creditors who appear at this final accounting: Crowell's Est., 2 W. 295; Williamson v. Naylor, 3 Y. & C. 208.

(*b*) Where there has been no award of dividends by the court they remain part of the estate, and Est. of Potter & Page, 54 Pa. 465, did not decide otherwise: Green v. Weston, 3 Mylne & Craig, 385; Mitchell v. Stiles, 13 Pa. 306; In re Wilson, 4 Pa. 430. Payment of a dividend, not its declaration, vests title to it in the creditor: Trickett on Assignments, page 204, note; Carson v. McFarland, 2 R. 118; Duhring's App., 13 Pa. 240. The resulting trust for the assignor does not arise until the debts and expenses are satisfied: McLellan's App., 26 Pa. 463.

*S. Davis Page, Howard Warts Page* with him, for appellee. —This case is ruled by Estate of Potter & Page, 54 Pa. 465, which sustains the conclusion of Judge KING in Latimer's Est., 2 Ash. 520, as interpreted by Judge ALLISON, in the former case at page 469: " The rights of creditors between themselves and the assignee become fixed by a dividend made by mutual agreement, in which all have for many years acquiesced, and such dividends vest an exclusive right in each creditor as against other creditors to his ascertained proportion of the assets." As the dividends here have been unclaimed, part since 1849 and the rest since 1867, there is a legal presumption of payment: Drysdale's App., 14 Pa. 531; Biddle v. Girard Bank,

109 Pa. 349; Foulk v. Brown, 2 Watts, 214; Gregory v. Commonwealth, 121 Pa. 627; Van Loon v. Smith, 103 Pa. 238; Power v. Hollman, 2 Watts, 222; Bentley's App., 99 Pa. 500; Ingraham v. Cox, 1 Parson, 70; Sichrist v. Sichrist, 1 P. & W. 419; Wilkinson's Est., 1 Pars. Select Eq. 170; Buchanan v. Rowland, 5 N. J. L. 721.

After so long a time a bill for an account could not have been maintained: Ellison v. Moffatt, 1 Johns. Ch., N. Y. 46; Kingsland v. Robert, 2 Paige, N. Y. 193; Bean v. Tonnelle, 94 N. Y. 381. A mere demand would not rebut presumption of payment: Sellers v. Hollman, 20 Pa. 321. The bona fides of Meredith's claim rested on presumptions merely: Pennsylvania Co. v. Austin, 42 Pa. 257.

In view of Mr. Meredith's fiduciary relation there should have been clearer proof of assignment than the payment of dividends either by himself or his representative upon claims alleged or acknowledged to have been acquired by him, especially in view of the fact that he could not traffic in the assets of the estate for his own advantage: Ex parte Lacey, 6 Ves. 628; Ex parte James, 8 Ves. 346; Hawley v. Mancius, 7 Johns. Ch. 174, 188; Campbell v. McLain, 51 Pa. 200; Reed v. Warner, 5 Paige's Ch., N. Y. 650; Davine v. Fanning, 2 Johns. Ch. 256.

Where acquiescence is relied on it is essential that the person acquiescing should know exactly the nature of the thing to which his acquiescence is supposed to be given and the effect of such acquiescence: Strange v. Forks, 4 Giff. 413; Cockerell v. Cholmeley, 1 Russ. & Myl. 425; Adair v. Brimmer, 74 N. Y. 539, 554; Cumberland Coal Co. v. Sherman, 20 Md. 151; Campbell v. McLain, 51 Pa. 200.

The English cases relied upon by the appellants were either ruled by the provisions of their bankrupt law or by the special circumstances of each particular case or the special terms of the deeds of trust or wills under which they were decided, and this is particularly true of Green v. Weston, 3 Myl. & Cr. 385; Ward v. Arch, 12 Sim. 472; and a careful analysis of every American case cited by them shows that each is as little applicable to that before the court on this appeal, and that many did not refer to the points in support of which they were cited.

OPINION BY MR. JUSTICE McCOLLUM, July 18, 1895:

The fund in dispute consists of the unclaimed dividends in the estate assigned by Maurice Wurts & Co., on the 11th of August, 1819, for the benefit of their creditors. It was awarded by the learned court below to the administrator of William Wurts who was the surviving assignor. The award or decree so made is contested on this appeal by the administrators of William Meredith on whom the active duties of the trust devolved. From 1819 to 1844 Meredith had the exclusive management of the estate. He died in September, 1844, and Eli K. Price became his administrator and also a trustee under the deed of assignment. No account of his administration of the trust was filed by Meredith but he made and preserved memoranda showing what he did in execution of it. From these it appears that he " paid to himself or retained for his own use " the dividends on certain claims standing in the names of parties who were creditors of the assignors. It also appears from memoranda made by and from books and papers in the possession of Price, that he, as trustee of the assigned estate, paid to himself as Meredith's administrator all the dividends subsequently appropriated to these claims. There is no direct evidence of a sale of the claims to Meredith but his legal representatives contend that his action and the action of his administrator in reference to the payment of dividends upon them authorize and support an inference or presumption that he purchased them while he was trustee. That Price retained the dividends in the belief that the claims on which they were awarded belonged to Meredith's estate is manifest from the recitals in his receipts for the same, but upon what information his belief was based does not appear. If Meredith bought the claims and they were assigned to him it is reasonable to suppose that he would have preserved the evidences of his title to them. Price was the administrator of his estate and entitled to the possession of the books and papers pertaining to the ownership of the assets he was called to administer, and such of them as were applicable to the issues in this distribution were accessible to the appellants. Their failure to produce any evidence of an assignment of the claims to Meredith other than the appropriation of the dividends by him and his estate compels them to rest their present contention on the presumption arising from such appropri-

ation.   A presumption that he purchased the claims for his
personal benefit would contain an imputation of dishonesty in
the administration of the trust.   The law condemns speculation
by the assignee in the debts of his assignors, and will not allow
him to appropriate the profits of it.   If Meredith bought the
claims in question and the parties from whom he purchased
were satisfied with their sale of them, whatever he made by the
transaction inured to the benefit of the trust estate.   He cer-
tainly could not recover from the estate in the form of dividends
on the claims more than he paid for them, and this was presum-
ably less than the dividends applicable to them.   All of these
dividends having been received by him or his estate it would
seem that something more than the mere appropriation of them
was necessary to give his representatives a legal or equitable
standing in this contest.   But we do not rest our affirmance of
the decree on this ground alone.   It appears to be in harmony
with and sustained by the provisions of the assignment in ref-
erence to distribution.                         •

The trust deed shows that it was the intention of the assign-
ors that each of their creditors should accept in full satisfaction
of his claim his proportionate share of whatever sum might be
realized from the assigned effects, and that the share of any
creditor refusing to so accept it within the time prescribed
should revert to them.   The share of each creditor was ascer-
tainable on the basis of the whole indebtedness and therefore
the share of a releasing creditor was not affected by the refusal
of another creditor to comply with the conditions on which the
right to a share depended.   A releasing creditor who has re-
ceived his proportionate share of the sum realized from the
assets has no further interest in that sum.   His receipt of the
share which his compliance with the provisions of the deed gave
him extinguished his interest in it and satisfied his claim.   It
appears to be conceded that the shares of the creditors were
correctly ascertained and that the dividends awarded to them
have exhausted the assigned estate.   As each creditor was the
exclusive owner of the dividends appropriated to his share
under the deed he was without any interest in or lawful claim
upon the dividends awarded to the shares of the other creditors.
Neither Meredith nor Price as his administrator ever claimed
any part of the dividends which constitute the fund in dispute.

In 1867 Meredith's heirs endeavored to have them adjudged to be assets of his estate, but the decision of the orphans' court was adverse to their contention and they acquiesced in it. The renewal of their contention in another form and forum after the lapse of a quarter of a century, is to say the least of it, somewhat remarkable, and evincive of a change of view respecting their relation to the dividends they then sought to appropriate. These dividends were in the hands of their ancestor who they allege was the owner of the claims on which they base their present contention. His books showed that the parties to whom they were awarded could not be found. If his legal representatives are entitled to them now his estate was entitled to them in 1867. But we need not discuss this subject further. For the reasons already stated we think the appellants have no standing to contest the claim of the appellee. We think, too, that as no one having the right to contest the claim appears, or can be found, the proper decree was entered on the authority of the decision in the Estate of Potter & Page, 54 Pa. 465.

Decree affirmed and appeal dismissed at the cost of the appellants.