CASE 114—ACTION TO RECOVER LAND—FEB. 13.

# Farnsworth v. Doom, &c.

### APPEAL FROM NELSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. AFFIRMED.

ASSIGNMENT FOR CREDITORS—REVERSION TO ASSIGNOR AFTER PAYMENT OF DEBTS—PRESUMPTION OF PAYMENT BY LAPSE OF TIME.

Held: After the execution of the trust the surplus of an estate assigned for the benefit of creditors reverts to the assignor, and therefore after the lapse of thirty years from the time a suit for the settlement of an assigned estate was stricken from the docket, the heirs of the assignor, as against a stranger in possession, were entitled to land forming part of the assigned estate which had never been disposed of by the assignee; the presumption being that both the assignor and assignee have been discharged from liability to creditors by the lapse of time.

C. T. ATKISSON, ATTORNEY FOR APPELLANT.

On March 24, 1862, Lewis & Murphy made an assignment as partners and individually for benefit of their creditors, and by their deed conveyed all the title they had in the land in controversy to A. G. Nall and his successors, first, to pay expenses; second, to pay preferred debts, and, third, to pay general indebtedness of Lewis & Murphy *pro rata*. The liabilities so vastly exceeded the assets that no clause was thought necessary to provide for excess of assets, as is usual.

Treating the deed as an express trust, conveying all assets for the benefit of all creditors, it follows that neither Lewis nor Murphy, nor the heirs of either, could, by any possibility, claim any part of the assigned estate without showing the indebtedness of the firm had been paid, and the burden is on them to show this.

The plaintiffs in this suit claim to be the heirs of Wm. F. Lewis and F. G. Murphy, who composed said firm and made said assignment. The land was never sold by Nall, the assignee, and he is now dead and has no successor. Some fifteen or twenty years ago Robert Murphy, a son of F. G. Murphy, made a sale of the twenty-four acres now in controversy to J. D. Rizer, but the assignee refused to sign the deed and the sale fell through. The

land remained uninclosed until 1892 when appellant, Farns-
worth, who owned an adjoining tract of sixty acres, began fenc-
ing and cultivating it to prevent *undesirable persons from squat-
ting on it.* Appellee, Doom, after having failed to sell the land
to Farnsworth brought this suit, claiming that the heirs of
Murphy and Lewis were the owners of the land; that it can not
be divided without impairment of value, and alleged Farns-
worth was asserting title to a portion of it, and claiming rent
for· use and occupation and damages for cutting and convert-
ing timber.

Farnsworth answered controverting each allegation and al-
leged that he was the owner of some twenty acres thereof, and
had ·owned, occupied and claimed same for a long time. The
issue as made up threw the burden on plaintiffs to establish
ownership of the land in defendant's possession, and this is
the isue: Have the heirs of Murphy & Lewis a better right to
the land than Farnsworth?

NAT. W. HALSTEAD AND J. W. THOMAS, FOR APPELLEE.

The land in controversy was conveyed by deed of record by
Armistead Brown to Murphy & Lewis in March, 1856, and they
conveyed it to A. G. Nall in trust for the benefit of their cred-
itors in 1862. The land was not disposed of by the assignee,
but lay idle until about six years before this suit was filed
when appellant took possession of a portion of it and claims
it by no other title.

We claim that under the deed of assignment to A. G. Nall he
acquired only an equity therein for the benefit of the creditors of
Murphy & Lewis, and at the death of Murphy & Nall the legal
title passed to their heirs who are the appellees herein, and
after the failure of Nall to sell it, and the settlement and dis-
charge of Nall as trustee, the title reverted to Murphy & Lewis,
and by their death passed to their heirs by operation of law.
15 Ky. Rep., 784; 16 B. Monroe, 230; Lyons v. Field, 17 B.
Monroe, 549.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING. ·

In 1862 Lewis & Murphy, a co-partnership composed· of
William F. Lewis and F. G. Murphy, made to A. G. Nall
a general deed ·of assignment of all their property for the
benefit of all their ·creditors, ·conditioned (1) for the pay-
ment of the expenses of the trust; (2) for such specialties

as had legal priority; and (3) the residue to general cred-
itors *pro rata*. No reversion of surplus is provided for in
express terms. Nall accepted the trust, and took pos-
session of the assignors' estate, including the land in con-
troversy—a lot of about 26 acres situated in Nelson coun-
ty. The trustee instituted an action in the Nelson Cir-
cuit Court soon thereafter to settle his trust. Debts of
more than $30,000 were shown, and assets of about $4,000.
Two distributions among creditors are shown, aggregating
about 14 per cent. of their claims. Then, in 1866, appears
an order striking the case from the docket. The lot in
controversy, of no great value, was not disposed of by
the assignee. He died some years ago without reconvey-
ing it to the assignors, and without having conveyed it
to any one. In the meantime both the assignors died in-
testate, and appellees are their heirs at law. In 1892 ap-
pellant, finding no one in possession—the lot having been
apparently abandoned for many years—took possession
of it and fenced it. Appellees brought this suit to recover
the possession. Appellant defended on the sole ground
that, the title to the land having been conveyed by Lewis
& Murphy, their heirs had no claim, and consequently
they should not recover it. He makes no question of Lewis
& Murphy's title before the execution of the deed of as-
signment to Nall. The circuit court adjudged the land to
the heirs of the assignors.

Appellant, in seeking a reversal, argues that the legal
title to the land was conveyed to Nall, and is now in his
heirs for the benefit of the creditors of Lewis & Murphy;
that, in any event, Lewis & Murphy conveyed the legal,
or, as they termed it, the "fee-simple," title to Nall, and
made no provision for a reversion in any event; and that,
as it is shown that all debts are not paid in full, they

Farnsworth v. Doom, &c.

can not have any part of the assigned estate. In Ely v.
Hair, 55 Ky., 240, objection was made by debtors to a deed
of assignment for benefit of creditors because it expressly
stipulated that, in the event of surplus after payment of
debts, it should be paid over to the grantors. It was con-
tended that such a reservation made the deed void in law.
Said the court: "Such a reservation as the one here ob-
jected to does not invest the makers of the deed with
an interest in the surplus which they would not
have if the deed did not contain such a reservation.
In such a case, if any of the trust fund remained after
satisfying the trusts expressly created by the deed, there
would be, as to such surplus, a resulting trust for the ben-
efit of the grantors." The court further held in that case
that the making of a deed of trust by a debtor and the
making of a mortgage left in him the same estate in the
property. In the first instance he merely created a lien
for all or a specific number of creditors; in the other, for
one only. In each it would require the intervention of a
court of equity, or the further conveyance of the grantor,
to devest him of the title. In Lyons v. Field, 56 Ky., 549,
the court, further treating of this same subject (that is,
the estate created by a deed of trust for creditors), said:
"It was attempted, in the argument of the case, to draw
a distinction between a deed of trust made to pay debts
and one made to secure the payment of debts. There is
not, however, any substantial difference between them.
The object is the same (that is, that the property conveyed
shall be applied to the payment of the grantor's debts);
and in either case he has the right to pay the debts, and
thereby remove the incumbrance. In equity, the property
conveyed, subject to the incumbrance on it created by the
deed of trust, belongs to the grantor. Whatever remains

after the debts are paid belongs to him—not, as is contended, because he becomes a beneficiary to that extent under the deed, but because he is the owner of the property, and has conveyed it in trust for a special object, which being accomplished determines the trust, and by operation of law reinvests him with an equitable right to the residue of the property." It being clear, then, that the grantor in the deed owns the property, but has created an encumbrance upon it, how can this incumbrance be discharged, save by payment? Assuredly a composition by the debtor with all his creditors would satisfy the conditions of the trust, and reinvest him with the full title to his property. The deed of assignment being merely a lien or incumbrance to secure the payment of debts, the creditor must avail himself of the provisions of the law to enforce the payment. He must prove and present his demands to the assignee or the court for allowance, and seek to avail himself of the assignee's or other creditor's proceeding to marshal the assets and liabilities of the debtor for application under the deed. If he should fail to do this, he would manifestly lose his title or interest in the trust estate.

Whether limitation will serve to discharge the debtor of his liability to creditors next arises. There, of course, is no question but he would be personally discharged at the time fixed by statute. But as to the trust it is said in Burrill, Assignm., 727: "Sometimes the trust will be considered as closed by lapse of time. As a general rule of equity, an assignee in trust can not set up the statute of limitations against his *cestui que trust*, such direct trusts not being within the statute. The possession of the trust fund in the hands of the trustee or assignee is the possession of the *cestui que trust* for creditors, and is not held

adversely to them.   But after twenty years the law pre-
sumes the debts paid and the trust executed, so far as
respects creditors."   In Pennsylvania the doctrine seems
to be well settled that a trust results in favor of the as-
signor by operation of law as soon as debts are satisfied
and that a legal presumption of payment of debts arises
after twenty years.  Ross v. McJunkin, 14 Serg. & R., 369;
Webb v. Dean, 21 Pa. St., 32; Drysdale's Appeal, 14 Pa.
St., 534.   And in the later case of Ralston's Appeal, 169
Pa. St., 254, (32 Atl., 454), it is held that the personal repre-
sentatives of the assignor are entitled, in preference to
creditors, to undistributed and unclaimed dividends, con-
sisting of a fund in the hands of the assignee, after twen-
ty-one years.   If, instead of appellant, Nall were in pos-
session of the lot, his assignors, or their heirs at law,
could compel restitution to them of its title and posses-
sion; for, if the lapse of time had discharged him and
them from all liability to the creditors provided for in
the deed, the trust is executed, and the assignors are en-
titled thereupon to be repossessed of their property.  This
being true, it follows that the existence of the deed of
trust in this case made in 1862 was no hindrance to ap-
pellees' right of entry; and, the circuit court having so
adjudged, its judgment is affirmed.